# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:23-CV-00344-FDW-SCR

| | |
|---|---|
| SHANNON ASHFORD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) **MEMORANDUM AND** ) **RECOMMENDATION AND ORDER** |
| WELLS FARGO BANK, N.A., | ) ) ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on a "Motion to Compel Arbitration and Dismiss or, In the Alternative, Stay Pending Completion of Arbitration Proceedings" (Doc. No. 9) filed by Defendant Wells Fargo Bank, N.A. ("Defendant"), as well as the parties' briefs and exhibits. (Doc. Nos. 9-1, 9-2, 9-3, 13, 14, & 15).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and applicable authority, Defendant's Motion (Doc. No. 9) will be granted in part and denied in part. Specifically, the Court will grant Defendant's Motion to Compel Arbitration, and the undersigned respectfully recommends that Defendant's Motion to Dismiss be denied.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this lawsuit against Defendant for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (Compl., Doc. No. 1 at 7). Plaintiff was employed by Defendant from December 2018 until October 2022, when she was terminated

in a reduction in force ("RIF"). (Compl., Doc. No. 1 at 8, ¶ 1 & 10, ¶ 11). Plaintiff alleges that Defendant engaged in discriminatory acts against her based on race and color. <u>Id.</u> at 3, 8, ¶¶ 2, 6. Plaintiff filed charges with the Equal Employment Opportunity Commission on February 17, 2023, and received her "Notice of Right to Sue" on March 13, 2023. <u>Id.</u> at 8, ¶¶ 3- 4.

In response to Plaintiff's lawsuit, Defendant filed a "Motion to Compel Arbitration and Dismiss or, In the Alternative, Stay Pending Completion of Arbitration Proceedings." (Doc. No. 9). Defendant maintains that Plaintiff agreed to arbitrate this dispute and provided a copy of the Wells Fargo Mutual Arbitration Agreement ("Arbitration Agreement") executed by Plaintiff on November 30, 2018, along with a Declaration from a Wells Fargo representative. (Doc. No. 9-3).

The Arbitration Agreement contains the following introductory paragraph:

> Wells Fargo and I mutually agree that any legal Claims arising out of my application for employment, employment, or separation from employment with Wells Fargo shall be resolved by final and binding arbitration. Except as noted below, Wells Fargo and I agree to waive our rights to pursue any Claims in court or before a jury. This Agreement is subject to the Federal Arbitration Act.

(<u>Id.</u> at ¶ 1).

The Arbitration Agreement further states:

> **COVERED CLAIMS:** The Claims covered by this Agreement with any Wells Fargo entity, its officers, directors, shareholders, employees, agents, parent companies, subsidiaries, affiliates, predecessors, successors, and assigns (collectively "Wells Fargo") *include*, but are not limited to, *claims for discrimination*, *harassment*, *retaliation*, tortious conduct, wrongful discharge, breach of contract, promissory estoppel, expense reimbursement, wages, compensation, *or claims for violations of any federal, state, or local statute, regulation, or common law*, *including but not limited to*, *Title VII of the Civil Rights Act of 1964*, Americans with Disabilities Act, Age Discrimination in Employment Act, Older Workers Benefit Protection Act, Rehabilitation Act, the Equal Pay Act, Worker Adjustment and Retraining Notification Act, Family and Medical Leave Act, the Fair Labor Standards Act, and all applicable amendments.
>
> This Agreement shall not apply to worker's compensation claims, unemployment compensation benefit claims, or claims for benefits under the Employee Retirement Income Security Act. This Agreement does not prevent either party from seeking

temporary injunctive relief in court as long as that action is brought on an individual basis. If temporary injunctive relief is sought in court, the underlying merits dispute must still be resolved through arbitration. This Agreement does not preclude me from filing Claims with governmental agencies, and I will not be subject to retaliation for legally protected activity.

Id. at ¶¶ 2-3 (emphasis added).

## II.  DISCUSSION

Defendant now asks the Court to dismiss Plaintiff's claims and compel arbitration, or in the alternative stay the case pending the completion of arbitration proceedings.  (Doc. No. 9-1). The Court concludes the better practice is to first determine arbitrability, and if the matter is arbitrable, to compel arbitration.  See Fair v. Shutterfly LLC, No. 0:21-1718-JMC-SVH, 2021 WL 11421826, at *6 (D.S.C. Aug. 4, 2021) (where defendant submitted motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and an alternative motion to compel arbitration, the district court "decline[d] to address [the] Fed. R. Civ. P. 12(b)(6) arguments prior to . . . determin[ing] if a valid and enforceable arbitration agreement exists") (quoting NLRB v. Comm. Motor Bus Co., 439 F.2d 965, 970 (4th Cir. 1971) ("The Fourth Circuit has made clear that the parties must arbitrate all matters, not explicitly excluded that reasonably fit within the language used.") (internal quotations omitted)).

### A. Standard of Review

The Federal Arbitration Act ("FAA")[1] provides that written arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA requires courts to stay proceedings and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate.  9 U.S.C. § 3; Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (citing 9 U.S.C. § 3).

---

[1] The Arbitration Agreement provides that the FAA applies.  (Doc. No. 9-3 at ¶ 1).

As the Fourth Circuit has recognized, "arbitration clauses are enforced by way of Federal Rule of Civil Procedure 12(b)(3)" and "in considering such motions, courts may examine evidence outside the pleadings—including . . . the contract containing the applicable arbitration clause." Amos v. Amazon Logistics, Inc., 74 F.4th 591, 593 n. 2. (4th Cir. 2023). "A district court . . . has no choice but to grant a motion to compel arbitration where a valid agreement exists and the issues in a case fall within its purview." Adkins, 303 F.3d at 500 (quoting United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001)). "The burden is on the defendant to establish the existence of a binding contract to arbitrate the dispute." Hodge v. Toyota Motor Credit Corp., No. 1:22-CV-00001-MR-WCM, 2022 WL 2195022, at *2 (W.D.N.C. June 17, 2022) (quoting Rowland v. Sandy Morris Fin. & Estate Planning Servs. LLC, 993 F.3d 253, 258 (4th Cir. 2021)). If this evidentiary showing is made, "the party opposing arbitration must come forward with sufficient facts to place the entitlement to arbitration in dispute." SSC Winston-Salem Operating, Co., LLC, No. 1:17CV539, 2017 WL 4467278, at *2 (M.D.N.C. Oct. 5, 2017) (citing Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015)).

B. **Defendant's Motion to Compel Arbitration**

A litigant seeking to compel claims to arbitration under the FAA must establish that: "(1) a dispute exists between the parties; (2) the dispute falls within the scope of a written, valid agreement that includes an arbitration provision; (3) the parties' agreement relates to interstate or foreign commerce; and (4) the opposing party has failed or refused to arbitrate the dispute at hand." Amos, 74 F.4th at 595 (citing Adkins, 303 F.3d at 500-01).

Here, a dispute exists between the Parties that Plaintiff has refused to arbitrate, at least to date. (Doc. Nos. 13 at 5 & 15 at 5). The Parties' Arbitration Agreement relates to interstate commerce as Defendant is a federally chartered bank, and the Arbitration Agreement itself

provides that it "is subject to the Federal Arbitration Act." (Doc. No. 9-3 at 1); see also Pitt v. Wells Fargo Bank, Nat'l Assoc., No. 3:21-CV-3428-JFA-TER, 2022 WL 2068851, at *5 (D.S.C. Apr. 1, 2022), report and recommendation adopted, No. 3:21-CV-3428-JFA-TER, 2022 WL 1421120 (D.S.C. May 4, 2022) (recognizing a similar Wells Fargo arbitration agreement with its employee related to interstate commerce).

The only remaining issue for the Court to address is whether there is a written, valid agreement to arbitrate and, if so, whether the dispute in question falls within the scope of the agreement to arbitrate. If "the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute." Glass v. Kidder Peabody & Co., 114 F.3d 446, 453 (4th Cir. 1997) (internal quotations omitted); see also Campbell v. Five Start Quality Care – NC, LLC, Case. No. 3:21-cv-95, 2021 WL 5442221, at *3 (W.D.N.C. Nov. 18, 2021); Mitchell v. Rent-A-Center, Inc., Case No. 3:20-cv-162, 2020 WL 6528862, at *2-3 (W.D.N.C. Nov. 5, 2020).

**1. Validity of the Agreement**

The Court first addresses whether there was a written, valid agreement to arbitrate. The validity of an arbitration agreement is determined by the application of state law principles governing formation of contracts. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Rogers v. Tug Hill Operating, LLC, 76 F.4th 279, 285 (4th Cir. 2023). Under North Carolina law, "[t]he essential elements of a valid, enforceable contract are offer, acceptance, and consideration." Lewis v. Lester, 760 S.E.2d 91, 93 (N.C. Ct. App. 2014) (citing Copy Products, Inc. v. Randolph, 303 S.E.2d 87, 88 (N.C. Ct. App. 1983)).

As the party seeking to compel arbitration, Wells Fargo has met its burden of demonstrating that a valid agreement to arbitrate exists. Here, Defendant provided a Declaration from a Senior

Employee Relations Consultant, Ms. Menaker, which attached a copy of the Arbitration Agreement between the Parties. (Doc. Nos. 9-2 & 9-3). Defendant's Declaration contains the following statement, among others:

> ¶ 6: I have reviewed Shannon Ashford's employment documents during her employment with Wells Fargo. According to Well Fargo's records, which are kept in the ordinary course of business, Ms. Ashford was given access to the Onboarding Portal in November 2018. On November 30, 2018 at 4:27 p.m., after she had created a unique username and password known only to her and logged-in to the Onboarding Portal, Ms. Ashford executed the Wells Fargo Mutual Arbitration Agreement. A true and correct copy of the Wells Fargo Mutual Arbitration Agreement executed by Ms. Ashford, as that document is stored by Wells Fargo in Ms. Ashford's personnel file in the ordinary course of business, is attached as Exhibit A.

(Doc. No. 9-2 ¶ 6).

From a review of this Declaration and the attached Arbitration Agreement, Plaintiff specifically agreed to, and electronically signed, the Arbitration Agreement on November 30, 2018. (Doc. No. 9-3). The Arbitration Agreement also contains a digital stamp of the Defendant's then third-party vendor, CARCO GROUP, Inc., which was used to maintain the Defendant's onboarding portal, to "verify that this document has not been altered in any way." Id. By signing the Arbitration Agreement, Plaintiff agreed to resolve "any legal Claims arising out of [her] application for employment, employment, or separation from employment with Wells Fargo. . . by final and binding arbitration." Id. Plaintiff further "agree[d] to waive [her] rights to pursue any Claims in court or before a jury." Id.

In her opposition brief, Plaintiff argues that she was not aware of or does not recall the arbitration agreement. (Doc. No. 13 at 1-2). However, a bare assertion, without evidence, that Plaintiff does not recall signing the Arbitration Agreement is insufficient to rebut Defendant's evidence of the existence of a signed Arbitration Agreement. See Snow v. Genesis Eldercare Rehab. Servs., LLC, No. CV 3:22-1794-SAL, 2023 WL 371085, at *5-11 (D.S.C. Jan. 24, 2023)

(finding the magistrate judge correctly decided that a signatory's inability to remember signing an agreement was insufficient to create a genuine issue of fact as to the authenticity of the signature) (citing Gordon v. TBC Retail Grp., C/A No. 2:14-cv-03365-DCN, 2016 WL 4247738 (D.S.C. Aug. 11, 2016)); Cullen v. Hall Auto., LLC, No. 2:21-CV-00047, 2022 WL 1561227, at *6 (E.D. Va. Jan. 7, 2022), report and recommendation adopted, No. 2:21CV47, 2022 WL 1262549 (E.D. Va. Apr. 28, 2022) (recognizing that plaintiff's failure to remember signing the arbitration agreement does not create a material dispute sufficient to defeat arbitration where plaintiff made no unequivocal dispute as to signing the Arbitration Agreement); Campbell, 2021 WL 5442221, at *3; Cook v. General Elec. Co. GE Aviation, No.:09-CV-400-BO, 2010 WL 4885115, at *4 (E.D.N.C. Nov. 23, 2010).

While Plaintiff separately provided a Declaration in response to Defendant's Motion, she includes no similar statements as those included in her brief regarding her failure to recall the Arbitration Agreement or signing it. (Doc. No. 15-1). Notably, Plaintiff's Declaration also contains no statement disputing the authenticity of her signature or challenging the validity of the Arbitration Agreement. Id. Instead, in regard to arbitration, Plaintiff's Declaration states only that during conversations about certain complaints with a Wells Fargo employee, there was no mention of an Arbitration Agreement by the Wells Fargo employee. Id. Plaintiff's attempt to avoid arbitration on this ground falls short as well. Defendant filed a timely motion seeking arbitration in the instant lawsuit. (Doc. No. 9). Prior filings also indicate Defendant had reached out to Plaintiff to discuss arbitration near the beginning of this lawsuit without success. (Doc. No. 7). Accordingly, the undersigned does not find that Defendant unreasonably delayed raising the Arbitration Agreement. See Pitt, 2022 WL 2068851, at *3 (analyzing a similar arbitration agreement and rejecting plaintiff's argument that delay in raising the arbitration agreement with

plaintiff amounts to a waiver of the right to arbitration). The undersigned further finds that Plaintiff has neither argued nor shown that she suffered any actual prejudice even if Defendant had failed to demand arbitration at an earlier stage. See id. (citing Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 702 (4th Cir. 2012) and MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001)).

Plaintiff also argues that "forcing arbitration would be unnecessary and unconscionable." (Doc. No. 13 at 1). "A court may invalidate an arbitration agreement based on defenses applicable to contracts generally, including unconscionability." See Pitt, 2022 WL 2068851, at *3 (citing Kindred Nursing Ctrs. Ltd. v. P'ship v. Clark, 581 U.S. 246, 251 (2017)). "A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." Musselwhite v. Cheshire, 831 S.E.2d 367, 377 (N.C. App. 2019) (citations omitted). "Procedural unconscionability involves bargaining naughtiness in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." Id. "Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms." Id.

In the instant case, Plaintiff does not set forth arguments to address how the Arbitration Agreement itself is unconscionable but only refers to forcing arbitration as "unconscionable" because Defendant has allegedly admitted "guilt and liability" to her claims. (Doc. No. 13 at 1). Plaintiff's argument misses the mark. There is a strong federal policy in favor of arbitration agreements, and therefore, forcing arbitration alone would not constitute unconscionability. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Ashford v. PricewaterhouseCoopers LLP, 954 F.3d 678, 685 (4th Cir. 2020). Rather, the Court's focus here must be on whether the Arbitration Agreement itself is unconscionable. Having considered Plaintiff's briefs, the Arbitration Agreement and other court decisions interpreting similar

agreements, the Court does not find the Arbitration Agreement unconscionable. Ashford, 954 F.3d at 685 (noting that unequal bargaining power alone does not render a contract procedurally unconscionable in the employment context); Pitt, 2022 WL 2068851, at *4 (rejecting plaintiff's unconscionability argument when interpreting a similar agreement but under South Carolina law); Droesch v. Wells Fargo Bank, N.A., Case No. 20-cv-06751, 2021 WL 1817057 (N.D. Cal. May 6, 2021) (granting motion to compel arbitration involving a similar agreement and rejecting plaintiff's unconscionability claims but under California law).

Considering all of this, the undersigned finds there is a valid and enforceable written Arbitration Agreement between Plaintiff and Defendant. Adkins, 303 F.3d at 500.

### 2. Scope of the Arbitration Agreement

Next, the Court turns to whether Plaintiff's claims are within the scope of the Arbitration Agreement. The Arbitration Agreement expressly provides that the Parties agreed to resolve "any legal Claims arising out of [Plaintiff's] application for employment, employment, or separation from employment with Wells Fargo. . . by final and binding arbitration." (Doc. No. 9-3 ¶ 1). The Claims covered by the Arbitration Agreement included claims for "*discrimination*, *harassment*, *retaliation*, . . . or claims for violations of any federal, state, or local statute, regulation, or common law, including but not limited to, *Title VII of the Civil Rights Act of 1964* . . . ." Id. ¶ 2 (emphasis added).

The undersigned finds Plaintiff's claims are squarely within the scope of the Arbitration Agreement. In connection with her employment with Defendant, Plaintiff alleges unlawful discrimination, retaliation, and harassment based on her race and color in addition to her "participation in reporting discrimination" as a protected activity. (Doc. No. 1 at 3, 8, 10-11). Plaintiff brought this action against Defendant pursuant to Title VII. Id. at 1, 7. She specifically

alleges discriminatory acts that include failure to promote, demotion, denial of equal pay/work, general harassment, retaliation, and termination of her employment. Id. at 3, 8, 10-11. The only two claims enumerated in the Complaint are "Cause 1: Retaliation" and "Cause 2: Discrimination Based on Race." Id. at 10- 11. Although Plaintiff is pro se and as such her claims will be liberally construed, the undersigned finds that all of her claims referred to in her Complaint fall under the plain language of the Arbitration Agreement.

Plaintiff states in her opposition brief that she also made claims related to Employee Retirement Income Security Act ("ERISA")[2] and fraud. (Doc. Nos. 13 & 15), but those claims are not pled in the original Complaint. (Doc. No. 1). Plaintiff has failed to properly bring those claims before the Court. As a result, those claims are not a part of Plaintiff's case to be considered here. See McNulty v. Commc'ns Workers of Am., No. 3:12CV-22-MOC-DSC, 2012 WL 1569601, at *3 (W.D.N.C. Mar. 16, 2012) ("Additional factual allegations contained in a response brief are not considered on a motion to dismiss.").

### III. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion (Doc. No. 9) is **GRANTED IN PART**. Defendant's Motion to Compel Arbitration (Doc. No. 9) is **GRANTED** because Plaintiff's claims are within the scope of a valid and enforceable Arbitration Agreement. The Parties shall submit their dispute to arbitration according to the terms of the Contract. This matter is **STAYED** pending arbitration. The Parties shall file a status report within 90 days of this Order and each 90 days thereafter.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that

---

[2] Plaintiff erroneously refers to the Act as the "Employment Retirement Income Security Act" in her brief. (Doc. No. 13 at 4).

"Defendant's Motion to Dismiss" (Doc. No. 9) be **DENIED WITHOUT PREJUDICE** to raising the same or other issues in the arbitration proceeding.

## V. TIME FOR OBJECTIONS

The Parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to the Parties' counsel and to the Honorable Frank D. Whitney.

**SO ORDERED AND RECOMMENDED.**

Signed: March 14, 2024

Susan C. Rodriguez
United States Magistrate Judge